**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | No. 2:11-cr-0472-DCN-1 |
| vs.                                              ) | |
| ) | **ORDER** |
| GARY LAMONTT SMITH,            ) | |
| ) | |
| Defendant.             ) | |
| _____) | |

      This matter is before the court on defendant Gary Lamontt Smith's ("Smith") motion to reduce sentence, ECF No. 1918. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

      On December 11, 2011, the government named Smith in a fourth superseding indictment charging him and a number of codefendants with crimes relating to their participation in a vast drug distribution network. ECF No. 1187. On April 30, 2013, after the first day of a trial, Smith pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement to Count One of the indictment, which charged Smith with a conspiracy to distribute heroin in violation of 21 U.S.C. § 846. ECF No. 1366. Prior to sentencing, the United States Probation Office prepared a presentence report ("PSR"), which noted that Smith was subject to certain sentence enhancements based on his previous felony drug convictions. ECF No. 1637. With respect to the crime for which he was convicted, the PSR held Smith accountable for "a conservative total of 10.425 kilograms of heroin." Id. ¶ 29. The PSR also noted that "[h]ad the defendant not been offered and accepted a Rule 11(c)(1)(C) plea agreement, Smith was facing mandatory LIFE imprisonment, pursuant

1

to 21 U.S.C. §[§] 841(b)(1)(A) and 851.  As a result of his plea, the parties have agreed to a 19[-]year, or 228[-]month, imprisonment term." Id. ¶ 71 (emphasis in original).

On September 19, 2013, the court sentenced Smith to a 228-month term of imprisonment, pursuant to his Rule 11(c)(1)(C) plea agreement.  ECF No. 1639.  On January 20, 2015, Smith filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2), pursuant to Amendment 782 to the United States Sentencing Guidelines (the "Guidelines").  ECF No. 1918.  The court determined that Smith was "not eligible for consideration based upon th[e] amendment [ ] because he entered a Rule 11(c)(1)(C) plea agreement," and thus denied the motion.  ECF No. 2115 at 1.  The court premised its ruling upon United States v. Brown, which held that relief under § 3582(c)(2) is "usually not available" where a defendant pleads guilty pursuant to a Rule 11(c)(1)(C) plea agreement except where "the plea agreement itself expressly refers to and relies upon" the defendant's Guideline range.  653 F.3d 337, 340 (4th Cir. 2011).

Smith appealed the court's order, and, during the pendency of his appeal, the Supreme Court issued Hughes v. United States, which abrogated the Fourth Circuit's decision in Brown.  138 S. Ct. 1765, 1775 (2018).  In Hughes, the Supreme Court announced that § 3582(c)(2) authorizes a district court to reduce a defendant's sentence, even where the defendant entered into a Rule 11(c)(1)(C) plea agreement, if the Guidelines range "was a basis for the court's exercise of discretion in imposing a sentence." Id. at 1775.  Where the Guidelines range "was not a relevant part of the analytic framework the judge used to . . . approve the agreement," the Supreme Court continued, "then the defendant's sentence was not based on that sentencing range, and relief under § 3582(c)(2) is unavailable." Id. at 1776.  Accordingly, the Fourth Circuit

vacated the court's order denying Smith's motion to reduce his sentence, noting that the court denied the motion "without the benefit of Hughes[.]" ECF No. 2456 at 3. Because the Fourth Circuit could "not conclude that the [ ] court eschewed the Guidelines range in favor of other sentencing factors," id., it remanded the motion with instructions to determine "whether Smith is eligible for relief . . . in the first instance," id. at 3 n.*.

On May 14, 2019, the court held a hearing on Smith's remanded motion to reduce sentence. ECF No. 2499. The night before the hearing, Smith's counsel filed a memorandum in support of his motion. ECF No. 2498. Therefore, the court declined to resolve the motion from the bench, noting that the government "ought to have a chance to respond to" the late-night filing. ECF No. 2525, 15:8–9. Thus, the court permitted the government the opportunity to respond and opted to resolve Smith's motion "on [the] paper[s]." Id. at 1–2. On October 27, 2020, the government filed a response to Smith's memorandum in support of his motion to reduce his sentence. ECF No. 2550.

On February 12, 2021, the court denied Smith's remanded motion to reduce sentence, finding that the sentencing factors under 18 U.S.C. § 3553(a) did not justify a sentence reduction. ECF No. 2575 (the "February 12 Order"). Smith appealed the February 12 Order to the Fourth Circuit, which again reversed the court's decision and remanded the motion for further consideration. ECF No. 2603. Specifically, the Fourth Circuit found that the court failed to consider Smith's "post-sentencing mitigation evidence . . . as is required by [ ] United States v. Martin, 916 F3.d 389 (4th Cir. 2019)." Id. at 1. After remand, Smith filed a supplemental brief, ECF No. 2611, the government filed a response, ECF No. 2635, and Smith filed a reply, ECF No. 2637. In his reply, Smith informed the court that the Bureau of Prisons ("BOP")—on the date of the reply's

filing—agreed to permit Smith to serve the remainder of his sentence on home confinement.  Id. at 2.  As such, the motion is once again ripe for the court's review.

## II.   DISCUSSION

Pursuant to the Fourth Circuit's remand order, the court considers Smith's motion according to the relevant sentencing factors and in light of Smith's post-conviction mitigation evidence.  Having so considered, the court finds that a reduction is warranted and therefore reduces Smith's sentence.

In sentencing a defendant or, in this case, determining whether a reduction is justified, 18 U.S.C. § 3553(a) requires a court to "impose a sentence sufficient, but not greater than necessary," considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
> [. . .]
> (5) any pertinent policy statement
> [. . .]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

As the court noted in its February 12 Order, many of the § 3553(a) factors weigh against reducing Smith's sentence.  Smith had a leadership role in a vast heroin distribution conspiracy, the object of which included transporting heroin from New York

4

to South Carolina for distribution to South Carolina citizens. Moreover, prior to his leadership role in the conspiracy for which he is currently incarcerated, Smith received three separate convictions for possession with intent to distribute heroin. ECF No. 1637 ¶¶ 35, 36, 38. These circumstances qualified Smith for a sentence of life imprisonment. Id. at ¶ 71.

Nevertheless, Smith's rehabilitative efforts since his incarceration have been substantial. As his spotless record with the BOP indicates, Smith has been a model inmate since his incarceration. ECF No. 2611-1 at 3. In addition to maintaining a clean disciplinary report, Smith has completed dozens of educational courses, obtained his GED, and completed the BOP's nonresidential drug program. Id. at 2, 4, 6, 7. Smith has also presented evidence that he volunteered to rebuild a BOP facility in Florida that was severely damaged by a hurricane in 2018. ECF No. 2611-3. Inmates who have served with Smith have written the court to attest to the ways in which Smith has positively impacted their lives, as has Connie Reese, the founder of an organization that provides services for victims of domestic abuse. ECF No. 2611-2. As such, compelling evidence exists on both sides of the ledger.

Recently, the BOP determined that Smith is eligible to serve the remainder of his sentence on home confinement. Recognizing the risk the COVID-19 pandemic imposes upon the incarcerated, Congress amended § 3624(c)(2) as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). That amendment gave former Attorney General Barr the power to "lengthen the maximum amount of time for which the Director [of BOP] is authorized to place a prisoner in home confinement." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 236 (March 27, 2020). Attorney General Barr

urged the BOP to utilize alternative confinement methods and directed the BOP to consider "the totality of circumstances" regarding each inmate, including the "danger posed by the inmate to the community" and "[t]he age and vulnerability of the inmate to COVID-19, in accordance with the [CDC] guidelines," concluding that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." Atty. Gen. William Barr, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.

As this court has often noted, the BOP is in a better position than the court to evaluate an inmate's placement alternatives. See United States v. Smith, 2019 WL 4016211, at *3 (W.D. Va. Aug. 26, 2019) ("[T]he court finds in this case that the BOP is in a superior position to evaluate Defendant's assertions and to determine the extent, if any, to which she should serve all or part of the end of her sentence in an RRC, or on home confinement."). Unlike the BOP, the court has limited insight into Smith's circumstances of incarceration and even less insight into the circumstances that await him at home. The court is confident that the BOP's decision to transfer Smith to home confinement reflects a deliberate and thoughtful weighing of the relevant considerations, including, most importantly, whether Smith is a danger to the community. Given Smith's compelling rehabilitative evidence, the court will defer to the expertise and experience of the BOP, which has determined that Smith is eligible for home confinement, meaning that he does not pose a danger to his community. Therefore, the court finds that the

sentencing factors justify a reduction in Smith's sentence, especially in light of Smith's rehabilitative efforts.

## IV.  CONCLUSION

Smith's motion is **GRANTED**.  Accordingly, Smith's previously imposed sentence of imprisonment is **REDUCED** to time served.  Smith's five-year term of supervised release and accompanying special conditions remain unchanged.  See ECF No. 1639.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 3, 2021**
**Charleston, South Carolina**